**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-02180-WJM-KMT

OTTER PRODUCTS, LLC, a Colorado Limited Liability Company,

    Plaintiff,

v.

TREEFROG DEVELOPMENTS, INC. d/b/a LIFEPROOF, A Delaware Corporation,

    Defendant.

_____

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS COUNTERCLAIMS OR,
IN THE ALTERNATIVE, TO BIFURCATE COUNTERCLAIMS**
_____

This matter is before the Court on Plaintiff Otter Products, LLC's ("OtterBox's"[1]) Motion to Dismiss Defendant Counterclaim Nos. I-V or, in the Alternative, to Bifurcate Discovery & Adjudication of Same ("Motion"). (ECF No. 39.) Defendant Treefrog Developments Inc. d/b/a LifeProof ("LifeProof") has filed a Response to the Motion (ECF No. 42), and OtterBox has filed a Reply (ECF No. 43). The Motion is ripe for adjudication. For the following reasons, the Motion is GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

On August 21, 2011, OtterBox initiated this action against LifeProof, bringing four claims of patent infringement based on the alleged infringement by LifeProof of four of

---

[1] Plaintiff refers to itself in Court filings as OtterBox.

OtterBox's patents.  (ECF No. 1.)  According to the original Complaint ("Original Complaint"), OtterBox designs, manufactures, and sells water-resistant and impact-resistant cases for electronic devices that allow users fully sensory interaction with and use of the enclosed electronic devices.  (*Id.*)  OtterBox alleged that one or more of the four patents are infringed by LifeProof's manufacture, use, sale, and/or offer to sell its iPhone 4 LifeProof Case, iPad 2 LifeProof Case, Swimming Headphone Adapter, and/or General Use Headphone Adapter.  (*Id.*)

On October 19, 2011, LifeProof filed an Answer, Affirmative Defenses, and Counterclaims in Response to Defendant Otter[Box]'s Complaint.  (ECF No. 10.)  In support of the counterclaims, LifeProof alleged,

> 7.  On information and belief, in late September 2011, a representative of OtterBox asserted to a representative from Best Buy that certain LifeProof products infringed the OtterBox patents and that OtterBox would remove LifeProof and its products from the market.  On information and belief, the same OtterBox representative indicated that Best Buy would run into future trouble if it continued to sell LifeProof products.
>
> 8.  Contrary to statements made by OtterBox to Best Buy, LifeProof's products do not infringe any patent or other intellectual property right of OtterBox under any reasonable claim construction.
>
> 9.  On information and belief, the comments made by OtterBox to Best Buy have resulted in substantial concessions being made by LifeProof as a requirement to continue to sell certain LifeProof products through the Best Buy retail stores.

(*Id.*)  Based on these allegations, LifeProof asserted seven Counterclaims against OtterBox:  federal unfair competition (First Counterclaim), intentional interference with contract (Second Counterclaim), intentional interference with prospective economic

advantage (Third Counterclaim), tortuous interference with business relations (Fourth Counterclaim), defamation (Fifth Counterclaim), non-infringement (Sixth Counterclaim), and invalidity (Seventh Counterclaim).  (*Id.*)

On November 1, 2011, OtterBox filed an Answer to LifeProof's Counterclaims. (ECF No. 12.)

Apparently through meet-and-confer efforts, OtterBox filed the operative First Amended Complaint ("Operative Complaint") on December 7, 2011.  (ECF No. 23.)  The Operative Complaint only brings three claims for patent infringement, and alleges (only) that the iPhone 4 LifeProof Case infringes those three patents.  (*Id.*)

On December 21, 2011, LifeProof filed an Answer to the Operative Complaint, which also included the same Counterclaims that LifeProof had previously filed in response to the Original Complaint, based on the same alleged conversation between an OtterBox representative and a Best Buy representative.  (ECF No. 31.)  The First, Second, Third, Fourth, and Fifth Counterclaims filed by LifeProof on December 21, 2011 were identical (verbatim) to the first five Counterclaims filed by LifeProof in response to the Original Complaint.  (*Id.*)[2]

On January 11, 2012, OtterBox filed its pending Motion to Dismiss, seeking dismissal of LifeProof's First, Second, Third, Fourth, and Fifth Counterclaims.  (ECF No. 39.)  In the alternative, OtterBox requested that these five Counterclaims be bifurcated

---

[2] The Sixth and Seventh Counterclaims were changed merely to track the fact that OtterBox's claims in the Operative Complaint involved three, rather than four, patents.

3

and stayed for purposes of discovery and trial. (*Id.*)  The Motion is fully briefed (*see also* ECF No. 42, 43), and ripe for adjudication.

## II.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a counter-defendant may move to dismiss a counterclaim for "failure to state a claim upon which relief can be granted." In evaluating such a motion, a court must "assume the truth of the [counter-claimant's] well-pleaded factual allegations and view them in the light most favorable to the [counter-claimant]." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the [counterclaim] contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted).  "Thus, 'a well-pleaded [counterclaim] may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

Federal Rule of Civil Procedure 42 provides in part, "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b).  "District courts have broad discretion in deciding whether to sever

issues for trial and the exercise of that discretion will be set aside only if clearly abused."

*Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1285 (10th Cir. 1999) (internal quotations omitted).

### III.  ANALYSIS

**A.     Motion to Dismiss**

**1.     Procedural Issues**

The Court first addresses two procedural issues regarding OtterBox's Motion to Dismiss.  First, this Court's Revised Practice Standards clearly state,

> In my view the overuse of motions filed pursuant to Fed. R. Civ. P 12(b)(6) in this District unreasonably delays the progress of civil litigation.  Motions brought pursuant to this Rule are strongly discouraged if the defect is correctable by the filing of an amended pleading.  Counsel should confer prior to the filing of the motion to determine whether the deficiency . . . can be corrected by amendment, and should exercise their best efforts to stipulate to appropriate amendments.  Counsel are on notice that failure to comply with this practice standard may subject counsel to an award of attorney's fees and costs assessed personally against them.

WJM Revised Practice Standard III.D.1.

OtterBox's Motion does not mention any conferral with counsel for LifeProof regarding attempts to resolve the issues raised in the Motion to Dismiss without Court intervention.  In LifeProof's Response, however, LifeProof contends,

> On January 4, 2012, OtterBox's counsel first indicated it was considering filing a Rule 12(b)(6) motion to dismiss LifeProof's counterclaims and requested a meet-and-confer.  LifeProof informed OtterBox that it was LifeProof's position that OtterBox waived its ability to move to dismiss LifeProof's Counterclaims 1-5 by answering them on November 1, 2011.  LifeProof explained to OtterBox that the Federal Rules precluded its motion.  *Even though LifeProof believed it was unnecessary, it also offered to amend its counterclaims to further bolster its allegations so the*

> *parties and the Court could avoid unnecessary motion practice. OtterBox refused this offer and filed the instant motion on January 11, 2012.*

(ECF No. 42, at 3-4 (emphasis added).)  OtterBox in no way responds to these contentions in its Reply.  Thus, OtterBox appears to have violated the language and spirit of WJM Revised Practice Standard III.D.1.

Second, it is notable that OtterBox originally filed an Answer to LifeProof's original first five Counterclaims, but then later decided to file a Motion to Dismiss the identical (verbatim) five Counterclaims after they were re-filed following OtterBox's filing of the Operative Complaint.  Both parties present viable arguments regarding whether OtterBox should be allowed to do so, with OtterBox having the stronger arguments. *See, e.g.*, *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1140 (10th Cir. 2005) ("If . . . defendant submits a motion to dismiss after filing an answer, the motion should be treated as a motion for judgment on the pleadings.").  However, this change of course makes OtterBox's failure to comply with WJM Revised Practice Standard III.D.1 even more troubling.  Considering these two issues together, the Court denies OtterBox's Motion to Dismiss for failure to comply with WJM Revised Practice Standard III.D.1.

    **2.    Substantive Analysis**

The Court also denies OtterBox's Motion to Dismiss for the separate and independent reason that the Motion to Dismiss lacks merit.

    **a.    Bad Faith**

OtterBox's primary argument in its Motion to Dismiss is that LifeProof's first five Counterclaims may only be maintained if OtterBox acted in bad faith in its statements

made to the Best Buy representative, and LifeProof's Counterclaims fail to sufficiently plead OtterBox's bad faith. LifeProof's Response indicates its agreement that it must show bad faith to succeed on its first five Counterclaims. *See also Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999) ("[B]efore a patentee may be held liable under § 43(a) [of the Lanham Act] for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith."); *id.* at 1355 ("[T]o avoid [federal] patent law preemption of . . . state law tort claims, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim.").

The question thus turns to whether LifeProof has sufficiently plead OtterBox's alleged bad faith in the statements made to the Best Buy representative. Again, accepting the Counterclaims' allegations as true, the OtterBox representative not only told the Best Buy representative that LifeProof's products were infringing, but also that "Otter[B]ox would remove LifeProof and its products from the market" and that "Best Buy would run into future trouble if it continued to sell LifeProof products." (ECF No. 31, ¶ 7.) LifeProof then goes on to allege that these statements to the Best Buy representative were "unlawful," "unfair," "fraudulent," "deceptive," "untrue," "misleading," done with "malice, oppression, and/or fraud," and done "wrongfully." (*Id.* ¶¶ 11, 20, 31.)

Several considerations lead the Court to conclude that LifeProof has sufficiently plead bad faith. First, while a patent holder is entitled to represent in good faith to a

potential infringer's customers that a particular patent is infringed by a particular product, the OtterBox representative is alleged to have made much more sweeping comments that OtterBox "would remove LifeProof and its products from the market" and that Best Buy would be in trouble for selling "LifeProof products."  According to the Original Complaint itself, LifeProof not only sells the iPhone 4 LifeProof Case, but also sells a case for the iPad, and certain adapters.[3]  Thus, the sweeping nature of the comments, given that OtterBox now asserts that only the iPhone 4 LifeProof Case is infringing, could evidence bad faith.

Second, on a related point, OtterBox voluntarily agreed to drop its claims that LifeProof's iPad case and adapters infringe OtterBox patents.  While dropping claims via an amended complaint certainly does not indicate that those original claims were brought in bad faith, the Court is not willing to say that a jury could not consider this fact in evaluating bad faith *vel non* of the OtterBox representative's statements to the Best Buy representative.

And third, the Court declines to require detailed factual allegations clearly evidencing bad faith at this early stage of the proceedings.  Indeed, OtterBox's argument that there is insufficient evidence of bad faith "would be more appropriate at the summary judgment stage than it is on a motion to dismiss."  *Skinner v. Metro. Life Ins. Co.*, 829 F. Supp. 2d 669, 678-79 (N.D. Ind. 2010) (stating that the plaintiff need not

---

[3] LifeProof's website also indicates that it (at least now) also sells a case for the iPod. *See* http://www.lifeproof.com (last visited Sept. 26, 2012); *see also* Fed. R. Evid. 201(b).

"make specific allegations of bad faith and [plead] state of mind"). At this early stage, sufficient indicia of bad faith will suffice, as a plaintiff or counter-claimant will generally not have tangible, concrete evidence of bad faith (*e.g.*, an internal e-mail) prior to discovery. See *McCampbell v. Chrysler Corp.*, 425 F. Supp. 1326, 1329 (E.D. Mich. 1977). Here, LifeProof's allegations regarding the OtterBox's sweeping representations regarding LifeProof and its entire business line of products, along with its explicit allegations of bad faith, make LifeProof's claims of bad faith plausible. See *Ridge at Red Hawk*, 493 F.3d at 1177.

### b.     Lanham Act Claim

OtterBox makes three other independent arguments for why certain particular Counterclaims of LifeProof should be dismissed. First, OtterBox argues that LifeProof's Lanham Act claim should be dismissed because LifeProof only conclusorily alleges that the OtterBox representative's statements were false. But the falsity *vel non* of the OtterBox representative's statements is intricately tied up with the merits of OtterBox's patent infringement claims, and thus LifeProof's Lanham Act claim is not properly dismissed at this early stage of the proceedings. If OtterBox's argument had merit, LifeProof would be required to provide detailed factual allegations regarding precisely why LifeProof's iPhone case does not infringe OtterBox's patents, which would include detailed description of the patents, allegations regarding proper claim construction, and detailed information regarding the nature, characteristics, and features of LifeProof's iPhone case. This the Court will not require LifeProof to do at the pleading stage. The

more telling question is whether LifeProof has sufficiently plead bad faith, which the Court concludes that it has.

### c. Intentional Interference With Contract Claim

OtterBox also argues that LifeProof has failed to plead certain essential elements of an intentional interference with contract claim.

> [The] elements of intentional interference with contractual relations tort [are] (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach o[r] disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

*See Slater Numismatics, LLC v. Driving Force, LLC*, No. 11CA0683, 2012 WL 2353847, at *8 (Colo. App. 2012).

OtterBox first argues that it did not induce Best Buy to *breach* its contract(s) with LifeProof, because LifeProof admits that it continues to sell its products through Best Buy, and that it is simply now more expensive and/or burdensome to do so. However, *Slater*, at least, allows this claim to be maintained not only based on an induced breach of contract, but also based on a sufficient disruption of the contractual relationship. *See also Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1202 (Colo. App. 2009) (allowing damages for intentional interference with contracts based on "disruption" to the plaintiff's business). LifeProof has sufficiently plead a significant disruption of its relationship with Best Buy. Further, even if an intentional interference with contract claim must be based on an induced breach of a contract, LifeProof's allegations, viewed in a light most favorable to it, indicate that Best Buy may not have performed under the original terms

of its contract(s) with LifeProof.

Second, OtterBox argues that LifeProof has failed to sufficiently plead the required element that OtterBox acted "improperly" in making the alleged statements to the Best Buy representative. However, because the Court has held that LifeProof sufficiently plead bad faith, this satisfies the requirement that OtterBox allegedly acted "improperly."

### d. Defamation Claim

Finally, OtterBox argues that LifeProof has failed to plead the required elements of a defamation claim.

> In Colorado, the elements of a cause of action for defamation are: (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication.

*Williams v. Dist. Court, Second Judicial Dist., City & Cnty. of Denver*, 866 P.2d 908, 911 n.4 (1993).

OtterBox first argues that LifeProof "does not cite much less plead the publication element." (ECF No. 39, at 13.) That argument entirely lacks merit, as the allegations clearly indicate that the OtterBox representative's statements about LifeProof were made to the Best Buy representative, a third party. *See Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371, 379 (Colo. 1997) (stating that "the term 'publication,' as it is applied in defamation claims, . . . includes any communication by the defendant to a third person") (internal quotations omitted).

And second, OtterBox argues that its statements were not defamatory.  A statement is "defamatory" if it "tends to hold the plaintiff up to hatred, contempt or ridicule, or to cause him to be shunned or avoided.  Defamation tends to injure the reputation of the plaintiff and reflect upon his character."  *Walters v. Linhof*, 559 F. Supp. 1231, 1236 (D. Colo. 1983).  Here, the sweeping statements allegedly made by OtterBox about LifeProof and its products, along with the effect the statements allegedly had on LifeProof's relationship with Best Buy, were sufficient to cause LifeProof to be "shunned or avoided" by BestBuy, and "tend[ed] to injure" LifeProof's reputation with Best Buy.  Thus, the defamatory nature of the statement is sufficiently plead by LifeProof.  Again, the more telling question is whether OtterBox acted in bad faith, and the Court has already held that LifeProof sufficiently plead bad faith.

For all of the aforementioned reasons, OtterBox's Motion to Dismiss is denied.

**B.     Motion to Bifurcate and Stay**

OtterBox alternatively requests that the Court bifurcate and stay LifeProof's first five Counterclaims.

Regarding discovery of the first five Counterclaims, neither OtterBox's Motion nor its Reply makes a separate argument as to why discovery on the five Counterclaims should be stayed, instead focusing on the benefits of bifurcating trial. In LifeProof's Response, however, LifeProof argues that (as of February 1, 2012) the parties "are already proceeding with discovery on" the Counterclaims and that "very few additional witnesses or documents are involved in LifeProof's counterclaims, so no real efficiency

would be gained by bifurcation." (ECF No. 42, at 19.) Again, in its Reply, OtterBox does not specifically respond to these allegations that discovery on the Counterclaims was near completion as of February 1, 2012. OtterBox has not shown good cause for why discovery on the five Counterclaims should be stayed. If discovery has not already been completed as to the first five Counterclaims, the parties should wrap up such discovery in short order.

As for bifurcation of trial, OtterBox argues that bifurcation is appropriate because a finding of patent infringement in the first trial can prove that the plaintiff did not interfere with the defendant's customers in bad faith, thereby negating any claims of unfair competition and the like. (ECF No. 39, at 14-15.) In response, LifeProof argues that that premise does not apply in this case because OtterBox has already conceded, by amending its Original Complaint, that at least some of its original claims of infringment were baseless. LifeProof's argument is entirely unpersuasive because the trial to be conducted is on the patent infringement claims asserted in the Amended Complaint, not the Original Complaint.

LifeProof also argues that OtterBox's patent infringement claims and LifeProof's first five Counterclaims should be tried together because are based on substantially the same facts. The Court disagrees. OtterBox's patent infringement claims (along with LifeProof's Sixth and Seventh Counterclaims) revolve around OtterBox's patents, the proper construction of the claims therein, and the nature, characteristics, and features of the allegedly infringing iPhone 4 LifeProof Case. LifeProof's first five Counterclaims, on

the other hand, are based primarily on a September 2011 conversation between an OtterBox representative and a Best Buy representative (notably, a conversation that took place *afte*r this patent infringement action was first filed).  The Court agrees that a finding of patent infringement in the first trial could clarify the issues for the second trial on LifeProof's first five Counterclaims.  Thus, the trial will be bifurcated as OtterBox requests.

## IV.  CONCLUSION

In accordance with the foregoing, the Court hereby ORDERS as follows:

(1) Plaintiff's Motion to Dismiss Defendant Counterclaim Nos. I-V or, in the Alternative, to Bifurcate Discovery & Adjudication of Same (ECF No. 39) is GRANTED IN PART and DENIED IN PART;

(2) Plaintiff's Motion is granted only in that, if this case reaches trial, the Court, pursuant to Federal Rule of Civil Procedure 42, will first hold a trial on Plaintiff's patent infringement claims against Defendant, along with Defendant's Sixth and Seventh Counterclaims against Plaintiff (non-infringement and invalidity, respectively).  And then, if necessary, the Court will hold a separate, later trial on Defendant's First, Second, Third, Fourth, and Fifth Counterclaims against Plaintiff; and

(3) In all other respects, Plaintiff's Motion is DENIED.

Dated this 28th day of September, 2012.

BY THE COURT:

____________________________
William J. Martínez
United States District Judge